IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| VICKIE R. LAWSON, | ) |
| Plaintiff, | ) |
| v. | ) |
| ALTRIA RETIREMENT PLAN FOR HOURLY EMPLOYEES (TOBACCO WORKERS); and | ) Civil Action No. 3:12CV460–HEH |
| PHILIP MORRIS USA, INC. | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This action for pension benefits arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* It is presently before the Court on Defendants' motion to dismiss Count III of Plaintiff's three-count Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court will dispense with oral argument because it would not materially aid in the decisional process. For the reasons set forth herein, Defendants' motion will be granted.

## I. BACKGROUND[1]

From August 1980 until January 2010, Plaintiff Vickie R. Lawson ("Lawson") was an employee of Defendant Philip Morris USA, Inc. ("Philip Morris" or, together with Altria Retirement Plan for Hourly Employees (Tobacco Workers), "Defendants") in

---

[1] As required by Rule 12(b)(6), the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to her. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Richmond, Virginia. On November 23, 2008, she "was injured in a work-related [accident] and became disabled." (Compl. at ¶ 5.) Lawson claims that she returned to work for two days in November 2009, but "was on vacation status" thereafter. (Id. at ¶ 14.) On January 10, 2010, Philip Morris terminated her employment.[2]

Lawson began receiving monthly pension payments under the terms of the Altria Retirement Plan for Hourly Employees (Tobacco Workers)[3] ("the Altria Plan") on September 1, 2010. (Id. at ¶ 7.) She claims, however, that Defendants "miscalculated" the amount of her pension entitlement by failing to give her credit for the duration of her employment while on disability leave between November 2008 and January 2010. (Id. at ¶ 8.) Lawson further alleges that the Altria Plan did not contain any provision indicating that she "would not be eligible to receive pension service credits while she was receiving disability benefits from Philip Morris." (Id. at ¶ 10.)

Based on the foregoing, Lawson filed suit in this Court on June 25, 2012. Construed liberally, her Complaint asserts three essential causes of action.[4] Count I alleges that Defendants wrongfully denied her pension benefits in violation of section 502(a) of ERISA, 29 U.S.C. § 1132(a). In Count II, Lawson claims that Defendants breached their fiduciary duty by failing to explain in the summary description of the

---

[2] Elsewhere in her Complaint, Lawson alleges that she was discharged on January 7, 2010. (See Compl. at ¶ 12.) This factual inconsistency is not material to the analysis at hand.

[3] According to Defendants, the correct name of the pension plan is the "Retirement Plan for Hourly Employees." Regardless, the Court will utilize Plaintiff's nomenclature.

[4] Although Lawson's Complaint does not contain numbered "counts," this Court agrees with Defendants' grouping of Lawson's factual allegations and legal assertions into three distinct claims. Notably, Lawson's response to the instant motion to dismiss does not dispute that characterization of her Complaint. For purposes of simplicity, this Court will refer to Lawson's claims as "Count I," "Count II," and "Count III."

2

Altria Plan how her pension benefit service would be calculated during extended leaves of absence. And lastly, Lawson asserts in Count III that Philip Morris discharged her for the improper purpose of "prevent[ing] her from continuing to accrue pension service credits" while on disability, in violation of section 510 of ERISA, 29 U.S.C. § 1140. (Compl. at ¶ 12.)

In their motion to dismiss, Defendants maintain that Lawson's final claim is time-barred under the applicable statute of limitations. Alternatively, they argue that Count III is not supported by sufficient factual allegations in the Complaint to overcome the plausibility hurdle established by Rule 12(b)(6). Accordingly, Defendants move to dismiss Count III. Lawson has responded, and the matter is now ripe for disposition.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Generally, "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." However, a court may rule on an affirmative defense at the 12(b)(6) stage "if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)); *cf. Pantry Pride Enters., Inc. v. Glenlo Corp.*, 729 F.2d 963, 965 (4th Cir. 1984) (affirming the dismissal of an action under Rule 12(b)(6) as barred by the relevant statute of limitations).

3

To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. ANALYSIS

Section 510 of ERISA makes it "unlawful for any person to discharge" an employee who is participating in a covered plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

4

29 U.S.C. § 1140. However, ERISA does not contain an express statute of limitations.[5] In accordance with *Wilson v. Garcia*, 471 U.S. 261 (1985), therefore, this Court must "borrow the state statute of limitations that applies to the most analogous state-law claim." *A Society Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (citing *Wilson*, 471 U.S. at 266-67); *see also Payne v. Blue Cross & Blue Shield of Va.*, No. 91-2583, 1992 WL 235537, at *2 (4th Cir. Sept. 24, 1992) ("A federal court must look to the most analogous state statute of limitations in which the federal court sits to determine the appropriate filing deadline for ERISA actions.").

In this case, the parties dispute which Virginia cause of action is most "analogous" to Lawson's claim. Defendants contend that a wrongful termination action is the nearest fit, since the thrust of Lawson's allegations is that Philip Morris fired her for the unlawful purpose of interfering with her statutory benefits, in violation of the public policy set forth in section 510. Wrongful termination actions in Virginia are governed by a two-year limitations period. *See* Va. Code §8.01-248. In response, Lawson argues that her claim is more closely akin to an action for breach of contract, and thus subject to a six-year statute of limitations, *see* Va. Code § 8.01-246, because, as a member of the Baker, Confectionary, Tobacco Workers and Grain Millers International Union (the "Union"), the terms of her employment were ultimately "based upon" a collective bargaining agreement ("CBA") between Philip Morris and the Union. (Pl.'s Mem. Opp'n, ECF No. 10, at 2-3.)

---

[5] Although "Congress enacted a catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990," *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004), ERISA was enacted in 1974.

Although the U.S. Court of Appeals for the Fourth Circuit has not squarely addressed the issue, the vast majority of other circuit courts have construed section 510 actions as most analogous to wrongful discharge or employment discrimination claims. *See Muldoon v. C.J. Muldoon & Sons*, 278 F.3d 31, 32 (1st Cir. 2002) (collecting cases); *Sutter v. First Union Nat'l Bank of Va., Inc.*, 932 F. Supp. 753, 756-57 (E.D. Va. 1996) (same). Indeed, several courts of appeals have expressly rejected Lawson's contract argument. *See, e.g., Muldoon*, 278 F.3d at 32 (concluding that, "[a]lthough the amended complaint ma[de] reference to a collective bargaining agreement in its factual allegations," the plaintiff's "section 510 claim for benefits based upon his allegation of wrongful termination" was more analogous to a tort action than a contract action); *Hinton v. Pac. Enters.*, 5 F.3d 391, 394 (9th Cir. 1993) (applying California statute of limitations for wrongful termination pleaded in contract), *cert. denied*, 511 U.S. 1083 (1994). Moreover, every district court in the Fourth Circuit to consider the question has adopted Defendants' stance and applied the Virginia statute of limitations governing common law wrongful termination actions, rather than the more permissive statute of limitations applicable to contract actions. *See, e.g., Lester v. Framatome ANP*, No. 6:06cv015, 2008 WL 678597, at *3 (W.D. Va. March 12, 2008); *Flickinger v. E.I. Du Pont De Nemours & Co., Inc.*, 466 F. Supp. 2d 701, 708 n.9 (W.D. Va. 2006); *Malik v. Philip Morris USA, Inc.*, No. 3:06cv249, 2006 WL 1720689, at *4 (E.D. Va. June 20, 2006); *Baradell v. Bd. of Soc. Servs.*, 970 F. Supp. 489, 493-94 (W.D. Va. 1997); *Sutter*, 932 F. Supp. at 756-57. This Court will keep with that firm line of precedent.

The district court's reasoning in *Sutter* is especially instructive. In that case, a discharged employee sued her former employer and supervisor, alleging that she had been terminated for the wrongful purpose of impeding her right to pension benefits under ERISA. As here, the parties disagreed on the appropriate limitations period: the defendants insisted that the claim was barred by Virginia's catch-all statute of limitations, while the plaintiff asserted that her claim should proceed under the more lenient statute of limitations germane to contract actions. 932 F. Supp. at 756. Finding some merit to the plaintiff's position, Chief Judge Smith acknowledged that:

> A claim under section 510 that the employer terminated the employee in order to prevent her from obtaining retirement benefits does have some overtones of a breach of contract action, as the benefits at issue are typically contained in a written agreement between the employer and its employees.

*Id.* at 757. Judge Smith ultimately resolved the issue in the defendants' favor, however, finding "the wrongful discharge analogy ... much closer, because a section 510 action, at its core, is a claim by the employee that she was fired for an improper purpose." *Id.*

This Court adopts the analysis set forth in *Sutter*. Although Lawson's employment relationship with the Defendants was governed by contract, the essence of her claim is that Defendants *terminated her for an improper purpose*—namely, in order to impede her attainment of ERISA retirement benefits—not that they did so in violation of the CBA. In fact, the Complaint nowhere mentions a pertinent CBA provision, much less alleges that Lawson's discharge violated the terms of the CBA. Conversely, Lawson explicitly asserts in her Complaint that she was "wrongfully terminated." (Compl. at ¶ 12.) Because Count III of Lawson's Complaint most resembles a claim for wrongful

7

discharge under Virginia law, it is subject to the two-year limitations period set forth in section 8.01-248 of the Virginia Code.

A cause of action under section 510 of ERISA accrues on the date of termination. *See Sutter*, 932 F. Supp. at 757 n.4. Lawson alleges that she was terminated on January 10, 2010. Yet she did not file suit in this Court until June 25, 2012—more than two years and five months after her discharge from employment at Philip Morris. Count III of her Complaint is therefore time-barred, and must be dismissed. This Court need not address Defendants' alternative argument.

## IV. CONCLUSION

Based on the foregoing, this Court will dismiss Count III of Lawson's Complaint, alleging that she was wrongfully discharged for the purpose of interfering with her protected rights in violation of section 510 of ERISA. The remainder of her Complaint will remain extant.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Aug 22, 2012
Richmond, VA

8